UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| 10 GARVIES POINT ROAD CORP. and DOXSIDE INDUSTRIES, INC.<br><br>              *Plaintiffs*,<br><br>-against-<br><br>CITY OF GLEN COVE, GLEN COVE INDUSTRIAL DEVELOPMENT AGENCY, and UNITED STATES ENVIRONMENTAL PROTECTION AGENCY,<br><br>              *Defendants*. | **DECLARATION OF CHARLES S. WEBB III IN OPPOSITION TO MOTION FOR AMENDED ORDER**<br><br>Case No. 11-cv-949 (JS) |

I, CHARLES S. WEBB III, declare under penalty of perjury, pursuant to 28 U.S.C. §1746 and Local Civil Rule 1.10, that the following is true and correct:

1. I am a member of the law firm of Berger & Webb, LLP, counsel for plaintiffs 10 Garvies Point Road Corp. and Doxside Industries, Inc. ("Plaintiffs") in this action. I respectfully submit this declaration in response to the motion of defendants City of Glen Cove and City of Glen Cove Industrial Development Agency ("IDA" and together with City of Glen Cove, the "Defendants") for an Amended Order pursuant to Rule 60 of the Federal Rules of Civil Procedure and/or general principles of equity and fairness. This declaration is based upon my personal knowledge of the facts of this case and information provided by Plaintiffs.

**Background**

2. On June 22, 2006, IDA condemned the fee interest in the property located at 10 Garvies Point Road, Glen Cove, New York (the "Property") and the trade fixtures thereon. Immediately prior to the condemnation, plaintiff 10 Garvies Point Road Corp. was the fee owner of the Property and plaintiff Doxside Industries, Inc. owned the trade fixtures.

3. Pursuant to Section 304 of the New York State Eminent Domain Procedure Law, IDA was obligated to make an advance payment of just compensation to the Plaintiffs for the Property and trade fixtures it condemned based on the highest approved appraisals it obtained.

4. I understand that the advance payment in this case is in the total amount of $1,328,068.25, which consists of $979,400 for the fee interest, $323,668.25 for the trade fixtures and $25,000 for moving expenses, and that such amount had been held in escrow by the Nassau County Treasurer due to the IDA's concern that Plaintiffs may be subject to liability under the Navigation Law as a result of contamination that may be found at the site.

5. In February 2011, Plaintiffs commenced this action seeking the relocation payments and assistance they are entitled to under the Federal Relocation Act and regulations. Thereafter, the parties agreed to a settlement on the record, which was So Ordered by this Court on February 28, 2011 (the "Stipulation", Exhibit A hereto). Pursuant to the Stipulation, Plaintiffs were required to vacate the Property by March 3, 2011 and to clear the Property of all materials by April 18, 2011. (Stipulation, at 33.) However with respect to clearing the Property, the parties agreed that Plaintiffs would be given a 15-day extension if that became necessary:

> Plaintiffs shall affirmatively remove all structures, improvements ... by April 18, 2011, at their sole cost and expense provided, that in the event plaintiffs are working diligently regarding such undertaking and making all best efforts to remove material by the site by April 18, 2011, in the event that they require an additional 15 days, such request will not be unreasonably denied or delayed. (Stipulation, at 33-34.)

6. The Stipulation provided for a payout of $700,000 of the advance payment that was being held in escrow and would be released in stages based on the Plaintiffs' progress in clearing the site. (Stipulation, at 36-38.) The remaining $628,668.25 was to be held in escrow pending the resolution of the Navigation Law action which IDA committed to bring within 90 days of the date that all materials were removed from the site. (Stipulation, at 38.)

2

7. At the close of the record IDA's counsel asked to prepare a consensual draft of an order embodying the Stipulation. (Stipulation, at 41 ("MR. ZARIN: Should we prepare a consensual draft of what we think it [an order] would be? THE COURT: Why don't you do that.")) The proposed order thereafter submitted to the Court was signed by the Court on March 2, 2011 (the "March Order"; Exhibit B hereto), and specifically stated that it was "upon the consent and request of the Parties". (March Order, at 1.)

8. The March Order, which the parties prepared, provided that $700,000 of the advance payment was to be turned over by the Nassau County Treasurer to the Clerk of the District Court and distributed to Plaintiffs according to the payout schedule set forth in the Stipulation, with the $628,668.25 balance held by the Nassau County Treasurer pending resolution of any Navigation Law or similar action, which was required to be commenced by Defendants no later than July 18, 2011.

9. Significantly, even though IDA's counsel recognized in the Stipulation and was agreeable to an extension of the April 18th date for Plaintiffs removal of material from the Property (Stipulation, at 33-34), it failed to provide for an extension of the July 18th date in the March Order for commencement of the Navigation Law Action:

> ORDERED, that the balance of $628,668.25 shall continue to be held by the Nassau County Treasurer ("Remaining Funds") pending resolution of any cost recovery/indemnification action brought by the City of Glen Cove and/or IDA against Plaintiffs pursuant to any applicable state and federal laws, including, but not limited to, New York Navigation Law and state and federal Superfund law, <u>said action to be brought no later than July 18, 2011</u> .... (March Order, at 2 (emphasis added).)

10. IDA did not file a Navigation Law action by July 18, 2011; rather it commenced the action on August 2, 2011 when it filed a Summons and Verified Complaint (Exhibit C hereto) in the Nassau County Clerk's Office alleging claims against Plaintiffs under

3

the Navigation Law and common law. IDA thereafter attempted to serve Plaintiffs with the Summons and Verified Complaint.

11. Because IDA failed to meet the July 18, 2011 deadline for commencing the Navigation Law action, Plaintiffs have brought a motion before the condemnation court, namely, the Supreme Court, Nassau County, Justice Thomas A. Adams, for release of the $628,668.25 still being held in escrow, which motion is *sub judice*.

12. Having missed the July 18th deadline, IDA now seeks an amended order under Rule 60 of the Federal Rules of Civil Procedure and/or general principles of equity and fairness that would countenance its disregard of the July 18th deadline in the March Order. Because IDA does not meet the standard for such relief, its motion should be denied.

**Counsel's Mistakes or Inadvertence**
**Are Insufficient Grounds for Relief**

13. While IDA seeks relief from the March Order generally under Rule 60 and/or general principles of equity and fairness, the only potentially applicable basis for relief would be pursuant to Rule 60(b)(1), which allows a court to relieve a party from a final judgment or order due to "mistake, inadvertence, surprise, or excusable neglect."[1] This is because IDA's asserted excuse for missing the July 18th deadline was that it provided Plaintiffs with additional time to clear the site from April 18, 2011 until May 26, 2011[2] but neglected to provide in the March Order for any extension of the July 18, 2011 deadline in the event that Plaintiffs were given more time to clear the site even though IDA's counsel recognized in the Stipulation that an extension might be necessary. (Stipulation, at 34.)

---

[1] In this regard, there is no independent basis for relief from the March Order based on "general principles of equity and fairness"; only Rule 60(b) is applicable. *See Burda Media, Inc. v. Viertel*, 417 F.3d 292, 298 (2d Cir. 2005) ("Federal Rule of Civil Procedure 60(b) governs motions for relief from a final judgment or order").

[2] Although Plaintiffs required additional time to clear the site, they turned over possession of the site as of March 3, 2011 in accordance with the terms of the Stipulation, and thus the IDA has had control of the site and the ability to begin investigating the site since March 3, 2011, *i.e.*, five months before the IDA commenced the Navigation Law action.

14. IDA's counsel further erred in failing to stipulate with Plaintiffs, or to make a motion, for an amended order extending the July 18th deadline prior to granting the time extension to Plaintiffs. IDA's basis for an Amended Order is thus its own counsel's mistakes or inadvertence, and such request falls under Rule 60(b)(1).[3] *See Nemaizer v. Baker,* 793 F.2d 58, 62 (2d Cir. 1986) ("Relief from counsel's error is normally sought pursuant to 60(b)(1) on the theory that such error constitutes mistake, inadvertence or excusable neglect.").

15. IDA has not satisfied, and cannot possibly satisfy, the burden it must bear under Rule 60(b)(1), *i.e.,* to demonstrate that exceptional circumstances exist warranting relief. *See, e.g., Nemaizer v. Baker,* 793 F.2d 58, 61-62 (2d Cir. 1986) ("Since 60(b) allows extraordinary judicial relief, it is invoked only upon a showing of exceptional circumstances"); *U.S. v. Int'l Brotherhood of Teamsters,* 247 F.3d 370, 391 (2d Circ. 2001) ("A motion for relief from judgment is generally not favored and is properly granted only upon a showing of exceptional circumstances"). Indeed, the burden is even heavier where as here the movant seeks relief from an order submitted on consent of the parties: "When the parties submit to an agreed-upon disposition instead of seeking a resolution on the merits, however, the burden to obtain Rule 60(b) relief is heavier than if one party proceeded to trial, lost, and failed to appeal." *Nemaizer,* 793 F.2d at 63.

16. IDA has not even attempted to make a showing of exceptional circumstances; nor can it do so because the errors are entirely by IDA's counsel who erred by not protecting IDA's rights in the form of the order it prepared, which became the March Order, and agreed to an extension of time for Plaintiffs to clear the Property without first seeking to modify the March Order. At most, this is simple negligence or inadvertence and does not qualify as

---

[3] Rule 60(a) cannot apply here because the amendment IDA now seeks is not a clerical mistake, but affects the substantive rights of the Plaintiffs in that it deprives them of the remaining amount of the advance payment to which they would otherwise be entitled. *See Dudley v. Penn-America Ins. Co.,* 313 F.3d 662, 665 (2d Cir. 2002) ("We hold that the district court correctly construed Dudley's motion as one made pursuant to Rule 60(a). The Amended Judgment did not affect substantive rights.").

exceptional circumstances justifying Rule 60(b)(1) relief. *See, e.g., Nemaizer*, 793 F.2d at 62 ("But we have consistently declined to relieve a client under subsection (1) of the burdens of a final judgment entered against him due to the mistake or omission of his attorney by reason of the latter's ignorance of the law or other rules of the court, or his inability to efficiently manage his caseload"); *Meagher v. Cenment & Concrete Workers Dist. Counsel Pension Fund*, 1993 WL 512871, at *2 (S.D.N.Y. Dec. 6, 1993) ("While there have been occasional cases in which relief has been afforded from decisions voluntarily made on the ground that the party was given bad advice by his counsel, or that counsel acted in ignorance of the law or rules, it is generally held that this is not a basis for relief under Rule 60(b)").

17.  A case on point is *In re Carlton Concrete Corp.*, 2008 WL 4443233 (E.D.N.Y. Sept. 26, 2008). In that case, a cross-claimant in an adversary proceeding sought relief under Rule 60(b) from an order which had approved of a settlement of the proceeding pursuant to a stipulation between the debtor and the defendants, on the basis that the order contained language not present in the stipulation that enjoined the cross-claimant's claims against the defendants. Although the debtor had served the proposed order and stipulation on counsel for the cross-claimant, counsel acknowledged that "I carefully reviewed the Settlement agreement ... I did not as carefully review the order." *Id.,* at *4. This Court discussed the standard under Rule 60(b)(1), including the fact that "carelessness or ignorance of a litigant or its counsel does not provide grounds for relief under Federal Rule 60(b)(1)," *id.,* at *6, and affirmed the bankruptcy court's denial of relief. That result should certainly apply here where IDA's counsel participated in preparing the very order it now seeks to amend.

18.  In addition, Rule 60(b)(6), which allows relief from a judgment or order "for any other reason that justifies relief," cannot help IDA. First, this subsection only applies when none of the other grounds for relief set out in Rule 60(b) are at issue. Here, Rule 60(b)(1)

covers the asserted ground for relief, *i.e.,* IDA's counsel's mistakes in not protecting its clients' rights, and therefore Rule 60(b)(6) is not applicable. *See Nemaizer,* 793 F.2d at 63 ("As (b)(6) applies only when no other subsection is available, grounds for relief may not be mistake, inadvertence, surprise or excusable neglect"); *U.S. v. Int'l Brotherhood of Teamsters,* 247 F.3d at 391-92 ("Controlling cases have held that if the reasons offered for relief from judgment can be considered in one of the more specific clauses of Rule 60(b), such reasons will not justify relief under Rule 60(b)(6)").

19. Furthermore, Rule 60(b)(6) relief also requires a showing of extraordinary circumstances justifying relief as well as extreme and undue hardship if relief from the judgment or order is not granted. *See Nemaizer,* 793 F.2d at 63 ("This portion of the Rule is properly invoked only when there are extraordinary circumstances justifying relief ... when the judgment may work an extreme and undue hardship"); *In re Carlton Concrete Corp.,* 2008 WL 4443233, at *10 (same). As discussed above, IDA has made no showing of extraordinary circumstances; all that occurred here was simple lawyer inadvertence or negligence in counsel's not having adequately protected IDA's rights in the March Order and when the extension of time to clear the site was given to Plaintiffs. *See Harris v. U.S.,* 367 F.3d 74, 81 (2d Cir. 2004) ("In typical civil proceedings, this Court *very* rarely grants relief under Rule 60(b)(6) for cases of alleged attorney failure or misconduct") (italics in original). Indeed, even gross negligence does not suffice under Rule 60(b)(6). *See Meagher,* 1993 WL 512871, at *2 ("the Second Circuit has rejected the doctrine that an attorney's gross negligence, in itself, can justify relief under Rule 60(b)(6)").

20. Moreover, IDA cannot possibly make a showing of extreme and undue hardship. The only "concern" raised in IDA's papers is the naked allegation that "If the funds are released, IDA has a very real concern that it would not be able to recover the monies from Plaintiffs for the remediation of the Site." Affirmation of Michael D. Zarin in Support of Motion

7

for Amended Order, §12.  However, no facts are provided to justify this concern.  Specifically, IDA does not provide any factual basis for its belief that Plaintiffs' scrap yard business caused any contamination as opposed to the petroleum storage facility operated on the Property by the predecessor owner or neighboring Superfund sites.  IDA likewise fails to provide any factual basis for its concern that Plaintiffs would not pay any remediation costs if a court were to hold them liable for such costs.

21.    Simply put, IDA has not met the standard for relief from the March Order, an order which IDA's counsel assisted in preparing and which was submitted "upon the consent and request of the Parties." (March Order, at 1.)  Therefore this Court should deny IDA's motion for an Amended Order.  As IDA failed to bring the Navigation Law action by the July 18th deadline, Plaintiffs are entitled to the release of the remainder of the advance payment held in escrow by the express terms of the March Order.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on October 10, 2011

Charles S. Webb III (CW-8172)